**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **V.L., Z.L., and K.L.,**

**No. 21-1007** (Harrison County 21-JA-200-1, 21-JA-201-1, and 21-JA-202-1)

**MEMORANDUM DECISION**

Petitioner Father H.L., by counsel Jenna L. Robey, appeals the Circuit Court of Harrison County's November 22, 2021, order terminating his parental rights to V.L., Z.L., and K.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Dreama Sinkkanen ("guardian"), filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights rather than imposing a less restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2021, the DHHR filed a child abuse and neglect petition as well as an amended petition alleging that petitioner and the mother abused controlled substances, engaged in domestic violence, exposed the children to a drug environment, failed to provide a sanitary home, failed to supervise the children, and educationally neglected the children. Specifically, the DHHR alleged that the investigating Child Protective Services ("CPS") worker visited the home on August 31, 2021, and found a drug pipe, scissors, a torch, and knives within reach of the children, and that the home was in an unsanitary state with large piles of dirty clothes, overflowing garbage, and animals' feces. The children were also alone and unsupervised. Due to the dangerous conditions of the home, the parents were arrested on August 31, 2021, and charged with the felony offense of child abuse creating risk of injury. The DHHR also alleged that then-ten-year-old V.L.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

had over twenty-five unexcused school absences for the 2019-2020 school year and twenty unexcused absences for the 2020-2021 school year. Then-eight-year-old Z.L. had over twenty-nine unexcused school absences for the 2019-2020 school year and twenty-seven unexcused absences for the 2020-2021 school year.[2] Additionally, Z.L. underwent a Child Advocacy Center ("CAC") interview and reported watching petitioner beat the mother and that petitioner also smacked him or beat him with a belt. Z.L. reported that he had no bed to sleep in, that the parents leave "forever" including full nights, and that they leave Z.L. and V.L. to take care of their toddler sibling K.L. During V.L.'s CAC interview, she disclosed that the home had dog feces, rats, and mice. She stated that the parents fight over cigarettes and cheating, and that she takes K.L. away from the fighting when it breaks out. V.L. stated that she cared for K.L. by changing her diapers, that she had seen bruises on the mother from petitioner's beatings, and that she did not make it to school because the parents stayed asleep or did not have gas in the car. V.L. also stated that the parents "smoke weed," the mother stayed awake once for five days straight, and the parents had white powder on a piece of paper in their room. Thereafter, petitioner tested positive for methamphetamine at his waived preliminary hearing.

The circuit court held an adjudicatory hearing in October of 2021, and petitioner stipulated to the allegations in the petition, including that he abused drugs, failed to supply a safe home due to deplorable living conditions, and neglected the two oldest children's educational needs. The court adjudicated petitioner as an abusing parent. Although the record does not reflect a motion for an improvement period, the court ordered petitioner to participate in parenting and adult life skills classes, supervised visitation with the children, and random drug screening.

The circuit court held a final dispositional hearing in November of 2021 during which the DHHR recommended the termination of the parents' parental rights based on their noncompliance with services. The DHHR admitted petitioner's drug screen records into evidence, which showed that he submitted only one drug screen and that it was positive for methamphetamine. A CPS worker testified that her first and only contact with the parents was at the November 1, 2021, multidisciplinary team meeting, where the team members discussed closing services for the parents due to their noncompliance, but ultimately decided to allow services to continue. Petitioner testified that he had last used methamphetamine approximately ten days prior to the dispositional hearing. Petitioner acknowledged that he was unable to care for the children but argued that the circuit court should terminate his custodial rights only to allow him time to address his drug addiction and other issues.

After considering the evidence, the circuit court found that petitioner submitted to only one drug screen during the entire proceeding, and that screen tested positive for methamphetamine. Petitioner admitted that he last used methamphetamine only ten days before the final dispositional hearing, and as such, the court found that petitioner had taken no steps to address his drug addiction. The court further found that petitioner did not participate in supervised visitation with the children, and he had not participated in individualized parenting classes or adult life skills classes for the prior two months. The court found that petitioner had not addressed the conditions of abuse and neglect, had refused to follow through with a reasonable case plan, and had not responded to reasonable efforts to reunify the family. The court ultimately found that there was no

---

[2]K.L was not yet school-aged.

reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination was necessary for the children's welfare. Accordingly, the court entered its November 22, 2021, order, terminating his parental rights to the children. Petitioner now appeals that order.[3]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. According to petitioner, termination was not in the children's best interests, and the court should have implemented a less restrictive alternative disposition pursuant to West Virginia Code § 49-4-604(c)(5), which allows for a child to be committed to the care, custody, and control of a guardian. Without further explanation or citation to the record, petitioner claims that there was a "stable and appropriate home, where guardianship would be an appropriate form of permanency." Petitioner asserts that there was a reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination was not necessary for the children's welfare. We disagree.

Petitioner correctly cites West Virginia Code § 49-4-604(c)(6) and further cites West Virginia Code § 49-4-604(d), which provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help." Petitioner further acknowledges the following holding:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction

---

[3]The mother's parental rights were terminated below. According to the parties, the permanency plan for the children is adoption by their foster family.

3

with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4.

Notably, petitioner does not deny that he failed to follow through with a reasonable family case plan and failed to follow through with services. It is abundantly clear from the record that he failed to participate in drug screens and visitation with the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner only attended about half of the individualized parenting classes, and the CPS worker was able to contact him only once during the case. Petitioner admitted to using methamphetamine ten days before the dispositional hearing. Despite petitioner's receipt of services and assignment of a reasonable case plan, he failed to respond to the DHHR's reasonable efforts to reunify the family, and as such, petitioner cannot dispute the circuit court's finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. *See* W. Va. Code § 49-4-604(d)(3).

Rather, petitioner asserts that the court should have instituted a less restrictive dispositional alternative because there was a "stable and appropriate home, where guardianship would be an appropriate form of permanency." However, petitioner completely fails to advance this argument or cite to the record on appeal. These failures are in direct contravention of this Court's Rules of Appellate Procedure and the specific directions issued by administrative order. Specifically, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by [R]ule 10(c)(7)" are not in compliance with this Court's rules. "[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted).

Nonetheless, we also find that petitioner's reliance on West Virginia Code § 49-4-604(c)(5) is misplaced as he fails to recognize that this disposition is expressly meant to be temporary. *See In re I.A.*, 19-0152, 2019 WL 2451150, at *3 (W. Va. Jun. 12, 2019)(memorandum decision) ("What petitioner fails to recognize is that this dispositional alternative [under West Virginia Code § 49-4-604(c)(5)] provides only for a temporary placement for the child[.]"). Here, the children are all under the age of eleven and deserve permanency. As such, the record supports a finding that termination of petitioner's parental rights was necessary for the children's welfare.

Finally, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a less restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 22, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn